## AMERICAN NATIONAL BANK *et al. v.* ARMSTRONG.

1. One who is induced to subscribe for stock in a bank on the fraudulent representation of two of its directors that the bank is in a prosperous condition may go into equity for the cancellation of the contract of purchase, for the recovery of the purchase-money paid, and for a restoration of the status; and the bank and its officers who participated in the alleged fraudulent scheme are proper parties.
2. If the bank turns over its assets, including a note for a part of the purchase-money and the certificate of shares of the purchaser, to another bank for the purpose of liquidating its affairs, the inclusion of such liquidating agent as a party does not render the action multifarious.

AUGUST 16, 1916.

Equitable petition. Before Judge Mathews. Bibb superior court. March 29, 1915.

The action was brought by Guy Armstrong against the Commercial National Bank, J. J. Cobb, Cecil Morgan, and the American National Bank, for equitable relief. The defendants filed separate demurrers, which were overruled, and they jointly sued out a writ of error. The petition set forth that on September 15, 1912, the Commercial National Bank was a going concern, and that J. J. Cobb was its vice-president and Cecil Morgan was a director. On that day Cobb and Morgan came to petitioner's place of business and solicited him to purchase some stock of the Commercial National Bank. Cobb acted as spokesman, and, in the presence of Morgan, represented that the Commercial National Bank was in a prosperous and growing condition, with a capital stock of $200,000, and that on account of its being a prosperous and growing institution it had issued an increase to its capital stock of $100,000, and that the stock was worth $120 per share. Accepting these representations as true, petitioner a few days later entered into an agreement with Cobb as vice-president, and Lewis as cashier, of the Commercial National Bank, to purchase from the bank 20 shares of the increased capital stock, agreeing to pay

therefor the sum of $2,400. He gave promissory notes for this sum, and has paid the same, except one for $1,500 which is now being sued on in the city court of Macon by the American National Bank, which claims to have purchased the note from the Commercial National Bank before its maturity. It is alleged, that at the time of his purchase of the stock the Commercial National Bank was insolvent, and has remained insolvent; that the statements made to petitioner by Cobb, in the presence of Morgan, were untrue, and were made for the purpose of deceiving him and fraudulently obtaining from him the notes for the purchase-money of the stock; that the stock was of practically no value at that time, and that Cobb and Morgan knew or should have known this to be true, and that he bought the stock solely on the representations of Cobb, made in the presence of Morgan, and acquiesced in by him; and that the increase of the capital stock by the Commercial National Bank of $100,000 was not made on account of its prosperous and growing condition, but in order to keep it from being placed in the hands of a receiver, the bank being at the time in a failing condition, and the officers and stockholders knew this to be true. Petitioner has received four semi-annual dividends of 3 per cent., aggregating $240, but these dividends were never earned, and were paid out by the officers of the bank for the purpose of concealing the bank's insolvency and preventing the appointment of a receiver to wind up its affairs. One month after the payment of the last dividend the officers and directors of the Commercial National Bank placed its affairs and assets in the hands of the American National Bank as a liquidating agent. Included in the assets turned over to the American National Bank was petitioner's note for $1,500 (which had never been indorsed or transferred to it), and the certificate of stock for the 20 shares purchased by petitioner. The American National Bank at that time was familiar with the financial condition of the Commercial National Bank, and knew of the increased issue of capital stock by the Commercial National Bank, and that the officers of that bank did not increase its capital stock on account of the prosperous and growing condition of the bank, but that the increased issue was for no other purpose than to prevent the appointment of a receiver to liquidate its affairs. The American National Bank also knew that all the purchasers of the stock of the increased issue were obliged to have been victims of fraudu-

lent transactions, and that petitioner's note for $1,500 was given to the Commercial National Bank for the purchase-price of a part of the increased issue of stock. The debts of the Commercial National Bank have been assumed by the American National Bank. No receiver has been appointed to liquidate the affairs of the Commercial National Bank, but they are in the hands of the American National Bank as liquidating agent. The prayers are, for injunction against the prosecution of the suit in the city court of Macon; that the American National Bank be required to set up its rights in this proceeding; that the contract for the purchase of the 20 shares of stock and the promissory note be canceled; for discovery against the defendants, requiring them to show the financial condition of the Commercial National Bank on September 15, 1912, as well as since then; that judgment be rendered against the defendants jointly and severally for the amount of money paid out on account of the making of the contract; and for general relief.

*Hardeman, Jones, Park & Johnston, H. S. Strozier, Jordan & Lane, Miller & Jones, A. H. Heyward Jr.,* and *Mallary & Wimberly,* for plaintiffs in error. *Feagin & Hancock,* contra.

EVANS, P. J. (After stating the foregoing facts.) After overruling the demurrers, on a consideration of the sworn pleadings the court refused to enjoin the suit in the city court of Macon; and that judgment was affirmed by this court. *Armstrong v. American National Bank,* 144 *Ga.* 245 (86 S. E. 1087). The refusal of that injunction was based on the discretion of the trial judge upon disputed facts presented on the interlocutory hearing. The present judgment is upon demurrer; and the allegations of the petition must be taken as true, for the decision of the questions made in this writ of error. The plaintiff's case is, that the Commercial National Bank, an insolvent institution, for the purpose of concealing its true condition and avoiding liquidation through insolvency proceedings, issued and put on the market an increase of capital stock. The bank sold 20 shares of that stock to the plaintiff through the solicitation of two of its directors, one of whom made false statements as to its value in the presence of and with the approval of the other. The Commercial National Bank never delivered the certificate of stock to the plaintiff, but did pay him four semi-annual dividends of three per cent., which dividends were never earned, and within one month from the pay-

ment of the last dividend the Commercial National Bank delivered its assets, including a $1,500 note of the plaintiff given to the Commercial National Bank in part payment of the purchase of the shares of stock (which note was not indorsed or transferred by the Commercial National Bank), and the certificate of stock, to the American National Bank as its liquidating agent. Where a person is induced to subscribe for stock on the fraudulent representation of the directors of a bank that it is in a prosperous condition, he may go into equity for the cancellation of the contract of purchase, and for a recovery of the purchase-money paid, and a restoration of the status. The bank and its officers who participated in the alleged fraudulent scheme are proper parties. 2 Cook on Corp. 1120; Tyler v. Savage, 143 U. S. 79 (12 Sup. Ct. 340, 36 L. ed. 82). The joinder of the American National Bank does not render the petition multifarious, for the reason that it is alleged that it is in possession of the stock certificate and note only as a liquidating agent, and had notice of the transaction at the time it volunteered to act as such. If the plaintiff is entitled to have his subscription contract canceled, he is entitled to have his note surrendered; and the custodian of that note, who holds it merely as agent of the alleged fraudulent contracting party, is a proper party in order to give effect to the court's decree, should the plaintiff prevail. Although the plaintiff may not be able to obtain all the relief for which he prays, he will not be denied proper relief because of his excessive prayers.

*Judgment affirmed. All the Justices concur.*